IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MELISSA ANNE OETINGER,

                Plaintiff,

      v.

MICHAEL J. ASTRUE,

          Defendant.

Civil No. 10-379-PK

**FINDINGS AND RECOMMENDATION**

PAPAK, Magistrate Judge:

    Plaintiff Melissa Oetinger ("Oetinger") seeks judicial review of the Social Security Commissioner's final decision denying her application for Supplemental Security Income. This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons that follow, the Commissioner's decision should be reversed and remanded for further proceedings in accordance with these Findings

1 - FINDINGS AND RECOMMENDATION

and Recommendations.

## BACKGROUND

Born in 1984 (Tr. 73)[1], Oetinger has an eleventh-grade education. Tr. 92. She alleges disability since May 1, 2002 (Tr. 73), due to fibromyalgia and myofacial pain syndrome. Tr. 86. The Commissioner denied Oetinger's application initially and upon reconsideration, and an Administrative Law Judge ("ALJ") held a hearing on July 10, 2007. Tr. 430-52. The ALJ found Oetinger not disabled on October 25, 2007. Tr. 19-28. The Appeals Council denied review of the matter on October 29, 2009. Tr. 5. On March 2, 2010, the Appeals Council allowed Oetinger additional time to file a civil action in this court. Supp. Tr.[2] This action followed.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement. 20 C.F.R. § 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer September 10, 2010 (Docket #11).

[2]Citation "Supp. Tr." refers to the two-page Supplemental Transcript filed by the Commissioner on September 10, 2010 (Docket # 12).

2 - FINDINGS AND RECOMMENDATION

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the ALJ determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. § 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 416.920(e); Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform such work, she is not disabled. If the claimant cannot perform such work, the analysis continues.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v); *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden of production shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 416.966; 416.920(g).

## THE ALJ'S FINDINGS

At step one in the sequential proceedings, the ALJ found that Oetinger had not engaged in substantial gainful activity. Tr. 21. At step two, the ALJ found that she had the "medically

determinable impairment" of "fibromyalgia/chronic pain syndrome/possible Lyme disease," *id.,* but found Oetinger's testimony and that of her mother related to the severity of her impairment not credible. Tr. 25-27. The ALJ found that Oetinger's impairments did not significantly limit her ability to perform basic work-related activities for a twelve month period, Tr. 24, and therefore found Oetinger not disabled at step two in the sequential proceedings. The ALJ made no further findings.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin,* 554 F.3d 1219, 1222 (9th Cir. 2009), *quoting Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir. 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Id., citing Robbins v. Social Security Administration,* 466 F.3d 880, 882 (9th Cir. 2006), *see also Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id., see also Batson,* 359 F.3d at 1193.

///

4 - FINDINGS AND RECOMMENDATION

## DISCUSSION

Oetinger asks this court to review evidence the Appeals Council declined to accept. She also challenges the ALJ's assessment of her testimony and that of her mother, and asserts that the ALJ made improper findings at step two in the sequential analysis.

### I.    Post-Hearing Evidence

Oetinger now cites evidence outside the administrative record. Pl.'s Opening Br. 6 (citing Attach., 29, 32). She submitted this evidence as an attachment to her opening brief. Docket # 16. The attachment contains a July 22, 2008, neuropsychological report by Sheila Bastien, Ph.D. Attach. 1-32. The Appeals Council declined to admit this evidence into the record, noting that it was "about a later time," and therefore did not affect the decision that she was not disabled beginning on October 26, 2007. Tr. 6.

Oetinger cannot now rely upon evidence outside the Commissioner's administrative record. To justify a remand order from this court based upon new evidence, Oetinger must show that the evidence is (1) material, and (2) she had good cause for failing to produce it earlier. 42 U.S.C. § 405(g), *Mayes v. Massinari*, 276 F.3d 453, 460 (9th Cir. 2001).

Oetinger does not address these requirements. She states only that the Appeals Council should have considered the July 22, 2008, evidence because it was "based on Plaintiff's contemporaneous condition." Pl.'s Opening Br. 7.

This submission fails to establish that the July 22, 2008, report is either material or meets the good cause requirement. To meet the materiality prong, Oetinger must establish that the new evidence bears "directly and substantially on the matter in dispute," and there is a "reasonable possibility" it would have changed the ALJ's findings. *Mayes*, 276 F.3d at 462, *citing Ward v.*

*Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982) and *Booz v. Sec. Health and Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1983).

Dr. Bastien's evaluation repeats the reports of Oetinger and her mother (Att. 2-6), and contains Dr. Bastien's review of Oetinger's medical records produced between August 2004 and January 2008. Att. 7-17. Dr. Bastien made no additional diagnoses pertaining to the period under review. Though Dr. Bastien stated that "neurologically [Oetinger's] IQ has deteriorated more than 15 points," she provides no support for such a comparative finding. Dr. Bastien's report duplicates evidence already in the record and is therefore neither new nor material.

Oetinger must also establish good cause for failing to submit her new evidence earlier. *Mayes*, 276 F.3d at 462. She may not establish good cause simply by obtaining a more favorable expert opinion after the ALJ denied her claim. *Clem v. Sullivan*, 894 F.2d 338, 332 (9th Cir. 1990), *citing Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). To demonstrate good cause, Oetinger must show that the new evidence was unavailable at the time of her hearing. *Mayes*, 276 F.3d at 463.

Oetinger's briefing does not address this requirement. Nothing in the record suggests that Oetinger could not have obtained a psychologist's report prior to the ALJ's decision. For these reasons, Oetinger fails to meet the good cause requirement established by 41 U.S.C. § 405(g). This court therefore will not review the additional evidence.

## II.    Oetinger's Credibility

Oetinger asserts that the ALJ erroneously addressed her testimony regarding her symptoms and limitations. Pl.'s Opening Br. 8. Because the ALJ found that she had medically determinable

impairments at step two in the sequential proceedings, the ALJ was obligated to provide a distinct credibility analysis under the standards discussed below.

## A.    Standards: Credibility

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at1036, *citing Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995), *citing Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2005).

## B.    Analysis

### 1.    Medical Record

As noted above, the ALJ accepted Oetinger's diagnoses of fibromyalgia, chronic pain

syndrome, and "possible" Lyme disease, but found Oetinger's symptom testimony "not entirely credible." Tr. 26. The ALJ based this credibility finding upon a discussion of the medical record. Tr. 26-27. The ALJ stated that, because Oetinger denied any psychiatric element to her complaints, "the credibility of her allegations must be based on an analysis of the available medical evidence." Tr. 27. The ALJ subsequently discussed Oetinger's treatment records and concluded that they undermined the credibility of her symptom testimony.

### a.    Psychiatric Impairments

No authority permits the ALJ to conclude that a claimant's denial of her psychiatric impairments limits the ALJ in his consideration of her symptom testimony. The Ninth Circuit specifically recognizes that a psychiatrically-impaired claimant may be reluctant to seek treatment and may not be chastised for such behavior. *Nguyen v. Chater*, 100 F.3.d 1462, 1465 (9th Cir. 1996). The ALJ's reasoning on this matter should therefore be rejected.

### b.    Physician Opinions

The ALJ also found that "no treating or examining source has cited any objective findings to support the claimant's allegations of severe, disabling pain." Tr. 26. Here the ALJ cited examinations showing normal range of motion, normal neurological functioning, and laboratory studies that "have failed to yield results consistently positive for rheumatoid arthritis." Tr. 26-27. The ALJ also stated that "a reported brain MRI did not show signs consistent with MS." Tr. 27.

While the medical record may reflect significant clinical uncertainty regarding Oetinger's reported pain, the ALJ's truncated analysis misconstrues the record. Throughout the period under review, various treating physicians diagnosed fibromyalgia, myofacial pain, a generalized pain disorder, unspecified myalgias, and polyarthritis. Tr. 157, 259, 262, 269, 272, 275, 312, 346, 350,

364, 395, 398, 400. These diagnoses were based upon clinical observations and findings. *Id.* Further, an MRI of Oetinger's brain on January 26, 2006, showed a "single signal intensity," which was a "nonspecific finding." Tr. 359. The MRI report concurrently noted the location of this signal and concluded, "given this appearance and location, very early manifestations of multiple sclerosis are considered." Tr. 359-60. The medical record therefore does not support the ALJ's broad findings that treatment notes contradict Oetinger's symptom testimony.

Finally, the ALJ cited the chart notes of pain specialist Mark Kallgren, M.D., stating that they describe "the claimant's wildly inconsistent pain complaints (e.g. both surface and deep sensation pain, vastly different pain sensations, etc.) and positive Waddell's signs, such as complaining of pain just by touching her hair. Tr. 17. The ALJ found this report "consistent with malingering." Tr. 17.

Dr. Kallgren evaluated Oetinger on September 30, 2005, at the Legacy Pain Management Clinic. Tr. 256-260. Dr. Kallgren's physical examination found Oetinger cooperative, but noted that she refused to walk on her toes "stating it hurts too much." Tr. 258. Dr. Kallgren found Wadell's signs at "3/3" and noted that "including even light testing of her hair causes increased generalized pain in her neck, back, and arms." *Id.* He found Oetinger neurological reflexes slow, with "good" motor testing and normal range of motion. Tr. 259. Dr. Kallgren also found "trigger-point-type tenderness essentially everywhere that you touch her on her body, without exception." *Id.*

Following this examination, Dr. Kallgren diagnosed generalized pain syndrome consistent with fibromyalgia, probable mood disorder affecting this pain syndrome, possible poor coping skills, obesity and deconditioning, and a history of food and drug intolerances. *Id.* Dr. Kallgren felt that he could not provide further assistance to Oetinger, but suggested she see his psychiatric Nurse Practitioner, Kate Thompson to explore treatment options such as psychotropic therapy and

biofeedback.  *Id.*  He also stated that opioid therapy was reasonable, but he specifically declined to endorse Oetinger's "current natural regimen."  *Id.*

Contrary to the ALJ's analysis, Dr. Kallagren did not find Oetinger's pain complaints "wildly inconsistent."  Tr. 256-60.  Dr. Kallagren also did not opine that Oetinger was malingering.  *Id.* Instead, Dr. Kallagren noted that Oetinger's complaints might be psychiatric in nature.  Tr. 259. Because Dr. Kallagren referred Oetinger for further treatment with Nurse Thompson, and approved of opioid therapy, his notes do not support the ALJ's conclusion that Dr. Kallagren's report supports a finding that Oetinger was malingering or promulgated contradictory testimony.  The ALJ's reliance upon Dr. Kallagren's opinion in rejecting Oetinger's testimony is therefore not based upon the record or proper legal standards.

## 2.    Activities of Daily Living

The ALJ cited Oetinger's reported activities of daily living, but made no conclusions regarding these activities.  Tr. 26.  The ALJ noted Oetinger's report of "total body pain," and that she could not stand or walk for any length of time.  *Id.*  The ALJ may cite a claimant's activities of daily living in his credibility finding to show that the claimant provided inconsistent testimony, *Smolen*, 80 F.3d at 1284, or to establish that a claimant's activities are inconsistent with her stated limitations.  *Batson*, 359 F.3d at 1196.  The ALJ did not make any identifiable findings showing that Oetinger's testimony was inconsistent with other activity she performed, or inconsistent with her allegation of disability.   Simply repeating Oetinger's symptom testimony, no matter how incongruous it may appear, does not constitute a "clear and convincing" reason for finding Oetinger not credible.  Further, the ALJ did not point to any instance in the medical record showing that

Oetinger made contradictory reports of her symptoms. The ALJ's citation to Oetinger's reports of daily activities, without further analysis, should not be sustained as a reason for finding Oetinger not credible.

### C.    Credibility Conclusion

In summary, the ALJ failed to provide sufficiently clear and convincing reasons for rejecting Oetinger's symptom testimony. The ALJ infers throughout his discussion that Oetinger exaggerated her complaints or provided contradictory pain testimony. This court cannot determine the veracity of Oetinger's complaints. However, her statements to her physicians and regarding her activities are consistent throughout the record. The record additionally shows that Oetinger carried diagnoses of a pain disorder or fibromyalgia throughout the period in question. In such circumstances, the ALJ must provide clear and convincing reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036. The ALJ presently failed to do so, and his credibility findings therefore should not be sustained.

## III.    Lay Witness Testimony

Oetinger challenges the ALJ's evaluation of testimony submitted by her mother, Jennifer Oetinger. Pl.'s Opening Br. 8-9. Jennifer Oetinger submitted a third party function report to the record on July 12, 2005. Tr. 94-101.

### A.    Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 416.913(d), 416.945(a)(3); *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding

11 - FINDINGS AND RECOMMENDATION

the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant found not credible. *Valentine v. Comm'r Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009). Finally, this court may not find an ALJ's silent omission of lay testimony harmless unless it can "confidently conclude" that no reasonable ALJ, when fully crediting such testimony, would reach a different disability determination. *Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

### B.    Analysis

The ALJ noted Jennifer Oetinger's report that Oetinger "is able to spend fair amounts of time sitting and performing fine fingering activities, such as quilting and knitting." Tr. 27. The ALJ made no other mention of Jennifer Oetinger's testimony.

#### 1.    "Other" Source Testimony

Oetinger contends that the ALJ should have accorded deference to her mother's testimony because her mother is a registered nurse. Pl.'s Opening Br. 8. The Commissioner's regulations instruct that the Agency will consider non-medical source observations regarding the severity of a claimant's impairment. 20 C.F.R. § 416.908(d). Such sources include nurse practitioners, as well as caregivers and parents. 20 C.F.R. § 416(d)(1), (4).

Oetinger now cites the Commissioner's administrative ruling pertaining to lay testimony. *Id.* at 9 (citing SSR 06-3p). This citation suggests that non-medical sources interacting with a

claimant "in their *professional capacity*" may have "personal knowledge and expertise to make judgments" about a claimant's impairments. SSR 06-3p (available at 2006 WL 2329939 at * 3) (emphasis added). This ruling does not suggest the ALJ must accord deference to parental lay witness observations made in a personal capacity, and the ALJ did not err in this regard.

### 2.    Omission of Jennifer Oetinger's Testimony

Jennifer Oetinger wrote that Oetinger performs limited activities of daily living, including watching television, reading, going to the store and medical appointments, and constructing craft projects. Tr. 94. Oetinger performs these activities slowly, with frequent rests. *Id.* Oetinger is very slow to bathe and dress, and requires assistance in cutting her food and reaching the restroom. Tr. 95. Jennifer Oetinger stated that she prepares Oetinger's food because Oetinger cannot lift heavy items from the refrigerator, but that Oetinger folds her own laundry. Tr. 96. She additionally wrote that Oetinger requires assistance to walk outside, and cannot walk on uneven surfaces, walk down stairs, or step off a curb by herself. Tr. 97. Finally, she indicated that Oetinger is limited in lifting, walking, stair climbing, squatting, sitting, bending, kneeling, standing, reaching, and in using her hands. Tr. 99. She concurrently stated that Oetinger uses a cane, and wrote a note regarding Oetinger's "special nutritional needs." Tr. 100-01.

The ALJ must give "germane" reasons for rejecting a lay witness' testimony. *Nguyen*, 100 F.3d at 1467. The ALJ did not mention Jennifer Oetinger's testimony, other than to cite her reports that Oetinger spends time quilting and knitting. Tr. 27. This court may not affirm silent rejection of lay testimony unless it can confidently conclude that no ALJ, when fully crediting that testimony, would reach a different disability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050,

1055-56 (9th Cir. 2006).    Jennifer Oetinger's testimony suggests that Oetinger is nearly incapacitated. If true, this testimony establishes limitations regarding Oetinger's abilities to perform work-related functions at step two in the sequential proceedings.    Such limitations at step two, discussed below, would result in a different determination regarding the severity of Oetinger's impairments.    The ALJ's silent rejection of Jennifer Oetinger's testimony without discussion was error and therefore should not be sustained.

## IV.    The ALJ's Step Two Findings

Oetinger asserts that the ALJ erroneously evaluated the severity of her impairments at step two in the sequential proceedings.    Pl.'s Opening Br. 4-7.

### A.    Step Two Standards

At step two in the Commissioner's sequential disability evaluation, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month durational requirement.    20 C.F.R. §§ 416.909; 416.920(a)(4)(ii).    If the claimant does not have such a severe impairment, she is not disabled.    *Id.*

Step two findings must be based upon medical evidence.    20 C.F.R. § 416.920(a)(ii).    The Commissioner's regulations instruct that an impairment is "not severe" if it "does not significantly limit your physical or mental ability to do basic work activities."    20 C.F.R. §§ 404.1521(a); 416.921(a).    The step two inquiry is a "threshold inquiry." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).    Omissions at step two are harmless if the ALJ's subsequent evaluation considers the effect of the impairment omitted at step two. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).    The effect of this harmless error doctrine is tempered by additional requirements regarding a claimant's

mental impairments. Recent jurisprudence additionally instructs that an ALJ must incorporate the analysis contained in the Commissioner's Psychiatric Review Technique Form ("PRTF") into his findings regarding mental impairments at steps two and three. *Keyser v. Comm'r Soc. Sec. Admin.*, __ F.3d __ (9th Cir. June 1, 2011) (available at 2011 WL 2138237 at * 4).

### B.    Analysis

The ALJ found that Oetinger established fibromyalgia, chronic pain syndrome, and "possible Lyme disease" as documented impairments. Tr. 21. However, the ALJ separately found these impairments were "non severe." Tr. 24.

The relevant inquiry at step two is whether the claimant's impairments significantly limit her ability to perform basic work activities. 20 C.F.R. § 416.921. This inquiry is *de minimis* only. *Bowen*, 482 U.S. at 153-54. Notably, neither party addresses the manner in which Oetinger's medically-determinable impairments accepted by the ALJ interfere with any work-related functions. The Commissioner's regulations clearly instruct the ALJ to make such a determination at step two. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.921.

The ALJ based his step-two findings solely upon his rejection of Oetinger's symptom testimony. Tr. 26-27. Because the ALJ erroneously evaluated Oetinger's symptom testimony, as well as her mother's testimony, any findings based upon this evaluation cannot be sustained.

## V.    Remand

The ALJ erroneously evaluated Oetinger's testimony and that of her mother, and failed to apply the proper legal standards at step two in the sequential analysis. However, an error at step two cannot result in a finding of disability. The claimant must make a showing of disability in the

remaining sequential analysis. 20 C.F.R. § 416.920. Only then may the reviewing court credit testimony and award benefits in a finding that the claimant is disabled under the Commissioner's regulations. *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Oetinger makes no attempt to persuade this court of the manner in which the record before this court, in combination with alleged errors by the ALJ, support a finding of disability. Pl.'s Opening Br. 9-10. She states only that this court may order an award of benefits under 42 U.S.C. § 405(g), without any explanation.

Remand for further proceedings is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

Because neither the ALJ nor the parties discussed alternative findings of disability, a remand for award of benefits is inappropriate. *Harman*, 211 F.3d at 1180. The matter must be remanded for further proceedings addressing the improperly evaluated evidence discussed above. *Id.* Upon remand, the ALJ may revisit his step two findings regarding Oetinger's medically-determinable impairments. He must then assess Oetinger's testimony and that of her mother under the proper legal standards, and must subsequently make properly supported step two findings regarding Oetinger's alleged impairments. Finally, the ALJ must proceed through the remaining sequential analysis if necessary.

16 - FINDINGS AND RECOMMENDATION

## CONCLUSION

For the forgoing reasons, the court should REVERSE the Commissioner's final decision and REMAND this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 23rd day of August, 2011.

Paul Papak
United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION